THE OCQUEOC IMPROVEMENT COMPANY v. ALFRED
MOSHER, JR., AND ALVIN MALTBY.

*Logs and logging—Navigation company—Tolls for use of improvements—Contract.*

1. A river navigation company, organized under How. Stat. chap.
   111, cannot recover from log-owners for the use of its improvements where the rate of tolls has not been fixed by the State
   Board of Control, as provided by How. Stat. § 3859, in the
   absence of a special agreement by the log-owners to pay for
   such use.

2. The testimony in this case is held to fall short of showing such
   a contract liability on the part of the defendants, it appearing
   therefrom that, while the defendants were the owners of the
   logs on which the toll was charged, yet a third party had
   contracted with them to deliver the logs and to pay the toll.

Error to Bay.     (Maxwell, J.)     Argued June 27, 1894.
Decided July 10, 1894.

*Assumpsit.*     Plaintiff brings error.     Affirmed.     The facts
are stated in the opinion.

*Weadock & Purcell*, for appellant.

*John L. Stoddard*, for defendants.

MONTGOMERY, J.     Plaintiff brought this action against
the defendants to collect a balance claimed to be owing
for tolls for the use of improvements on the Ocqueoc
river, in Presque Isle county.     The declaration is on the
common counts.     To entitle the plaintiff to recover, it was
necessary to show an agreement upon the part of defendants to pay for the use of the improvements, as no attempt
was made to show that the rate of tolls had been fixed by
the State Board of Control, as required by statute.     How.

Stat. § 3859. While we do not hold that the parties may not waive the fixing of the rates of toll, and bind themselves by special contract, nothing short of this would entitle plaintiff to recover. The circuit judge directed a verdict for the defendants, so that the sole question is whether the plaintiff made a *prima facie* case showing a special contract between the defendants and the plaintiff.

A careful examination of the testimony offered convinces us that the plaintiff fell short of showing a contract liability on the part of the defendants. The evidence offered, fairly construed, shows that, while defendants were the owners of the logs on which the toll was charged, yet one Hodgson had contracted with the defendants to deliver them and pay the toll.

Plaintiff called two witnesses to establish the claim that the contract was with the defendants. The first witness was Frank W. Tallmadge. He testified that on the 1st of August, 1892, he went to defendants, Mosher and Maltby, and that he received the note of A. Maltby, payable to the order of J. V. Hodgson, for $1,000, to apply upon the tolls. He was asked on direct examination if he had any conversation with Mr. Maltby with reference to the tolls at the time of the taking of the note, and replied, "I went there to collect tolls, and they paid me this $1,000 on account of the tolls." He was then asked:

"I notice that this note is made payable to the order of J. V. Hodgson, and indorsed by him. State the conversation you had with Mr. Maltby with reference to making the note.

"*A.* He offered to give me Mr. Hodgson's note, and I would not accept it. I told him I wanted his own note; that I did not know anything about Mr. Hodgson, and I did not have anything to do with Mr. Hodgson in regard to the tolls."

He was then asked what answer Mr. Maltby made to these statements, and replied:

"Why, he said they had made a contract with Mr. Hodgson to cut, bank, and drive their logs, and that it included the tolls,—25 cents a thousand."

He then testified, further, that in September he called on the defendants, and asked payment of the balance due on the tolls, and that Mr Maltby said that the amount was correct, and they were ready to pay it, but that there were some other people laying claim to it, and they did not want to pay it until they knew whom to pay it to. On cross-examination he testified that, at this last-mentioned conversation, Mr. Hodgson and Fred Tallmadge were present, and that Mr. Hodgson took some part in the conversation, and it was then stated that Mr. Hodgson had been garnished by one Fitzpatrick. In answer to the question whether, at that time, Mr. Maltby did not claim that defendants had nothing to do with the payment of the tolls,—that that was a matter for Hodgson to attend to,—he replied:

"He may have said so.
"Q. If he did make that claim at that time, would you not have been very likely to remember it?
"A. I know he made that claim several times.
"Q. You would not say that he did not make that claim at that time?
"A. I couldn't say whether he made that claim at that time or not."

On redirect examination, witness testified to another conversation at the house of Mr. Maltby, in which Mr. Maltby had made the same claim,—that Hodgson was to pay the tolls,—and that, on the witness' statement that the plaintiff looked to the defendants for the tolls, Maltby replied that they would pay the tolls, and would charge it to Hodgson, but that they would have to see Hodgson first.

This testimony cannot be distorted into an admission of liability by defendants, as original contractors. It is open

to but one construction, and that is that Hodgson, as between the defendants and himself, had undertaken to run these logs, and was therefore liable to pay the tolls, and that defendants were willing to pay on the order of Hodgson, but not otherwise. Frederick Tallmadge testifies as to this same conversation in September, and also testifies that Mr. Hodgson was present, and to the statement of Mr. Maltby that Mr. Hodgson had been garnished by Fitzpatrick. He further testified that defendants said they were willing to pay the tolls as soon as they knew whom to pay them to; they didn't want to have to pay them twice. In answer to the question: "State whether or not Mr. Hodgson's presence there was brought about in any way by you," he replied: "They said, if we could get Fitzpatrick to dissolve their suit, that Mr. Hodgson could then fix it up, and I think I talked with him about that once or twice." In answer to the question, on direct examination, as to "what, if anything, was said by Mr. Maltby as to who was indebted for that balance," witness testified: "I don't know as he— We were talking about the tolls, and he said he was ready to pay them as soon as they found out whom they should pay them to." On cross-examination he was asked:

"Didn't Mr. Maltby claim, in that conversation, that it was not for them to pay the tolls; that that was a matter for Hodgson to attend to?

"A. No, sir; I don't think he did. I am not sure."

But witness had testified, in effect, that defendants stated that, upon the dissolution of the garnishment, Hodgson could then settle for the tolls; showing very clearly that the parties must have understood that the original liability rested upon Hodgson, and was so understood and contended by defendants. This is not weakened by the testimony of Frank Tallmadge, who testifies that defendants said they owed the amount, and were ready to pay it when they

knew whom to pay it to.  This must be construed in connection with his other testimony, and it is idle to say that the witness did not understand that the defendants were contending from the first that the liability to pay was the liability of Hodgson.

We think the judgment should be affirmed, with costs.

The other Justices concurred.